FILED ___ LODGED
___ RECEIVED ___ COPY

MAR 13 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**SEALED**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

**REDACTED FOR PUBLIC DISCLOSURE**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    vs.<br><br>1. Dewayne Frederick Johnson,<br>   (Counts 1-7)<br><br>2. Antoinette Suzanne Arangua,<br>   (Counts 1-3, 8-11)<br><br>    Defendants. | CR-18-346-PHX-DJH (DKD)<br><br>**INDICTMENT**<br><br>VIO:  18 U.S.C. § 371<br>      18 U.S.C. § 1029(b)(2)<br>      (Conspiracy)<br>      Count 1<br><br>      18 U.S.C. §1029(a)(3)<br>      18 U.S.C. § 2<br>      (Possession of 15 or more<br>      counterfeit or unauthorized<br>      access devices)<br>      Count 2<br><br>      18 U.S.C. § 1029(a)(4)<br>      18 U.S.C. § 2<br>      (Illegal possession of device-<br>      making equipment)<br>      Count 3<br><br>      18 U.S.C. § 1028A<br>      18 U.S.C. § 2<br>      (Aggravated identity theft)<br>      Counts 4-11 |

THE GRAND JURY CHARGES:

At all times material to this indictment, within the District of Arizona and elsewhere:

1. Since at least February 2017, defendants DEWAYNE FREDERICK JOHNSON and ANTOINETTE SUZANNE ARANGUA used hundreds of stolen credit card numbers to fraudulently buy gift cards, make other purchases, and get cash. JOHNSON and ARANGUA encoded stolen credit card numbers onto other cards, tested

the stolen numbers at various stores and gas stations, and then use them at other stores and gas stations to make larger purchases. As part of their scheme, JOHNSON and ARANGUA possessed more than a thousand stolen credit card numbers, as well as a credit card encoder, credit card embossers, and other materials and equipment they used to create fraudulent credit cards.

2. JOHNSON, 37, and ARANGUA, 33, live in Maricopa County, Arizona, and much of their fraudulent credit card activity took place in the Phoenix area. They also used stolen credit card numbers in the Tucson area and elsewhere during the scheme.

## COUNT 1
### Conspiracy
### 18 U.S.C. § 371, 18 U.S.C. § 1029(b)(2)

**The Conspiracy and Its Objects**

3. From at least February 2017 through at least October 2017, in the District of Arizona and elsewhere, defendants JOHNSON and ARANGUA knowingly and willfully conspired with each other, and with other persons known and unknown to the grand jury, to commit the following offenses against the United States: 18 U.S.C. §§ 1029(a)(1)-(5) (fraud and related activity in connection with access devices).

**Manner and Means of the Conspiracy**

4. It was part of the conspiracy that defendants would obtain a large number of credit card numbers without the authorization of the cardholder or issuing financial institution. Defendants then encoded stolen credit card numbers onto other credit cards, many of which bore JOHNSON's or ARANGUA's name. Defendants also, in some cases, used an embosser to emboss some or all of the stolen number onto the fabricated card.

5. Defendants tested the stolen credit card numbers on the fabricated credit cards by trying to charge relatively small amounts at various stores and gas stations in the Phoenix area and elsewhere. Defendants tested the stolen credit card numbers to make sure they were still active and had not been cancelled by the issuing financial institution.

6. Defendants then used the stolen credit card numbers to make other purchases. For example, after testing a number of credit cards for small amounts at a self-service computer station, defendants went to a supermarket and purchased gift cards and prepaid debit cards. Defendants also used stolen credit card numbers at gas stations to get cash. For example, defendants (i) used a stolen credit card number to pre-pay a set amount of gas, (ii) pumped only a small amount of gas, and (iii) returned to the cashier and asked for the difference in cash. Although many gas stations have policies against giving cash back for credit card purchases, defendants appeared to target busy stations in an attempt to take advantage of harried cashiers who would be less likely to catch on to their scheme.

7. Once the issuing financial institution was aware of the fraudulent activity with regard to a specific credit card number, it suspended the account. Defendants then used different stolen credit card numbers to continue making purchases, at times using multiple credit card numbers during the same transaction.

8. Defendants' possession and use of stolen credit card numbers affected interstate commerce. Some of the credit card numbers defendants possessed and used belonged to out-of-state cardholders. Several of the financial institutions that issued the credit card numbers defendants possessed and used are principally located outside of Arizona. Many of the gift cards purchased by defendants during the scheme were for vendors principally located outside of Arizona.

**Overt Acts**

9. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Arizona and elsewhere:

  a. On or about May 9, 2017, ARANGUA used a stolen credit card number to make a purchase at a grocery store in Phoenix.

  b. On or about May 11, 2017, JOHNSON and another man went to a store in Phoenix where the man used multiple credit card numbers at a self-service computer station inside the store. JOHNSON and the man then drove to a gas station where

the man attempted to authorize two separate $25 transactions using two of the stolen credit card numbers he had just tested at the other store.

  c. On or about May 17, 2017, ARANGUA, over the course of approximately 30 minutes, used approximately 15 different credit card numbers at a self-service computer station inside a Phoenix store.

  d. On or about July 3, 2017, over the course of approximately ten minutes, JOHNSON and ARANGUA both used multiple stolen credit card numbers at a self-service computer station inside a Phoenix store.

  e. During the month of August 2017, JOHNSON attempted to use at least 18 different stolen credit card numbers in at least 11 different transactions at gas stations in the Phoenix area, as detailed in the following chart:

| Date | Cards Used by JOHNSON in Transaction |
|---|---|
| 8/5/2017 | One (ending in -7460) |
| 8/5/2017 | One (ending in -7460) |
| 8/11/2017 | One (ending in -4035) |
| 8/14/2017 | Two (ending in -7720 and -9463) |
| 8/18/2017 | One (ending in -1780) |
| 8/23/2017 | One (ending in -6297) |
| 8/23/2017 | Three (ending in -9461, -1006, and -3605) |
| 8/23/2017 | Four (ending in -8273, -8198, -6001, and -6133) |
| 8/24/2017 | Two (ending in -0706 and -2388) |
| 8/29/2017 | One (ending in -6381) |
| 8/29/2017 | One (ending in -1816) |

  f. On or about the afternoon of October 12, 2017, JOHNSON attempted to use four different credit card numbers to pre-authorize a fuel purchase in the amount of $40 at a gas station in Peoria. All four were declined.

g. A few hours later, on or about the evening of October 12, 2017, JOHNSON and ARANGUA went to a gas station in Glendale where JOHNSON attempted to pre-authorize a fuel purchase in the amount of $40 using three different credit card numbers, all of which were declined. A few minutes later, ARANGUA entered the gas station store and attempted to pre-authorize a fuel purchase for $40 dollars with yet another credit card number. ARANGUA's transaction was not declined and after JOHNSON pumped a small amount of fuel, ARANGUA returned to cashier and got $32.35 in cash.

h. A short time later, on or about the evening of October 12, 2017, JOHNSON and ARANGUA went to a nearby gas station in Glendale. ARANGUA attempted to purchase two gift cards and a bag of candy. One gift card was authorized in the amount of $25. The second gift card was declined.

i. Later that same night, on or about the evening of October 12, 2017, ARANGUA went to another gas station in Phoenix and attempted to purchase an Amazon gift card but the credit card number ARANGUA used was declined. ARANGUA then went to three more gas stations in Phoenix. At the second gas station, ARANGUA used five different credit card numbers. At the third gas station, ARANGUA used two credit card numbers to try to pre-authorize a $40 fuel purchase.

j. On or about October 16, 2017, ARANGUA went to a gas station in Youngtown and attempted to pre-authorize a $20 fuel purchase. The first credit card number she used was declined but the second credit card number was approved. ARANGUA then went to a gas station in Glendale where she attempted to pre-authorize a $40 fuel purchase. ARANGUA attempted to use three different credit card numbers at this location. All were declined. ARANGUA attempted to use two of the credit card numbers a second time before leaving the store.

k. Later that same evening, on or about October 16, 2017, JOHNSON went to a gas station in Phoenix and attempted to pre-authorize a $40 fuel purchase. JOHNSON used four different credit card numbers. All were declined. JOHNSON then went to a different gas station in Phoenix and attempted to pre-authorize a fuel purchase.

JOHNSON used five different credit card numbers. Four of the credit card numbers were declined, only the last credit card number was approved.

l.    In total, during an approximately three-month period, between August and October 2017, JOHNSON and ARANGUA visited more than 200 gas stations and convenience stores in the Phoenix and Tucson areas.

m.    On or about October 26, 2017, JOHNSON and ARANGUA possessed, and had custody and control of, the following items:

    i.    More than 1,000 credit card numbers;
    ii.    More than 100 credit cards;
    iii.    Two credit card embossers and 17 pieces of white plastic;
    iv.    One credit card reader/encoder; and
    v.    Approximately 74 gift cards and prepaid debit cards.

All in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1029(b)(2).

### COUNT 2
**Possession of fifteen or more counterfeit or unauthorized access devices**
**18 U.S.C. § 1029(a)(3)**

10.    The factual allegations above are incorporated in Count 2.

11.    On or about October 26, 2017, in the District of Arizona, defendants JOHNSON and ARANGUA, knowingly and with intent to defraud, possessed 15 or more counterfeit and unauthorized access devices in a manner affecting interstate and foreign commerce.

All in violation of 18 U.S.C. § 1029(a)(3) and 18 U.S.C. § 2.

### COUNT 3
**Illegal possession of device-making equipment**
**18 U.S.C. § 1029(a)(4)**

12.    The factual allegations above are incorporated in Count 3.

13.    On or about October 26, 2017, in the District of Arizona, defendants JOHNSON and ARANGUA, knowingly and with intent to defraud, possessed and had

control and custody over device-making equipment in a manner affecting interstate and foreign commerce.

All in violation of 18 U.S.C. § 1029(a)(4) and 18 U.S.C. § 2.

### COUNTS 4-11
### Aggravated identity theft
### 18 U.S.C. § 1028A

14. The factual allegations above are incorporated in Counts 4-11.

15. On or about the dates below, in the District of Arizona, defendants JOHNSON and ARANGUA knowingly possessed and used, without lawful authority, a means of identification of another person during and in relation to felony violations enumerated in 18 U.S.C. § 1028A(c), to wit 18 U.S.C. § 1029(a)(1)-(5), knowing that the means of identification belonged to another actual person.

| Count | Defendant | Date | Stolen Credit Card Number |
|---|---|---|---|
| 4 | JOHNSON | 8/23/2017 | Ending in -6133 |
| 5 | JOHNSON | 8/24/2017 | Ending in -2388 |
| 6 | JOHNSON | 10/16/2017 | Ending in -7334 |
| 7 | JOHNSON | 10/16/2017 | Ending in -6344 |
| 8 | ARANGUA | 10/12/2017 | Ending in -7944 |
| 9 | ARANGUA | 10/12/2017 | Ending in -5169 |
| 10 | ARANGUA | 10/12/2017 | Ending in -9060 |
| 11 | ARANGUA | 10/16/2017 | Ending in -8492 |

///
///
///
///
///
///

All in violation of 18 U.S.C. § 1028A and 18 U.S.C. § 2.

A TRUE BILL

S/
FOREPERSON OF THE GRAND JURY
Date: March 13, 2018

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

S/
M. BRIDGET MINDER
Assistant U.S. Attorney